Next case is 5-23-0264, Williams v. Mack's Auto Recycling. Allen, you ready to proceed? Yes, sir. Please identify yourself for the record, and you may proceed. Thank you, Your Honor. May it please the Court, Counsel, my name is William Gregory, and I represent the plaintiff appellant, Michael Williams, in this matter. Mr. Williams has filed a negligence complaint against the defendant, Mack's Auto, in regards to an incident that occurred back in December of 2018 when he fell on their property. As we explained in our briefs and in the documents that have been provided to the Court, the way that the plaintiff is viewing this is that the defendant breached their duty of ordinary care to a customer and an individual that was lawfully on their property. Counsel, do you agree this could only be characterized as a natural accumulation of snow or ice? Yes. I would agree that the natural, as my client testified, and as they have stated, there is a natural accumulation of ice. Now, there are other factors that are involved in this, and I believe that the cases bear out that that is something that if the facts support that there is an additional duty, that if, in fact, they breached that additional duty, they could still be held liable, even if... What additional duty is there? Well, there is the breach of ordinary care in regards to the way that they handled the situation with their customers in order to put the customers in a situation where the customer is not... in a situation where the customer is going to be injured. And so, I mean, as you look at the cases, I mean, even, you know, like the case in Zeminsky that is cited by the defendant, I mean, the courts there were dealing with the natural accumulation of ice and snow. But they said because of the nature of the floor that was created, that in that situation, this duty still existed. And that they breached that duty by failing to notify the individuals that there was an unnaturally slippery floor that they were walking over, that when it got wet would be more slippery than what would normally be faced. So would you agree that the incline would be characterized as slight? Yes, I believe that the testimony was that it's slight. And I think that if you're... Let's assume that the incline was completely a sheet of ice. Okay. If it's natural, there's no duty, is there? Well, there's still the duty of ordinary care. I mean, even though there's an incline, and even, you know, if you've got a case like Davis where you're just walking down the sidewalk or knocking down a street and the incline is slight and there's nothing else there, and that's the only factor that's an aggravation, I believe that, you know, the courts have said, and even the courts said that there's no hard line as to, well, this amount of an incline is good, this amount of an incline is bad. It's a totality of the circumstances. And when you have an incline in a situation such as what we're presented with here, with additional circumstances and facts, this is not somebody who drove into just like a store parking lot and just got out of their car and is walking through and the store has no other options like the Prywin case where the court said that the CTA really had no other options. You know, it was such a burden on them to try to figure out how to handle that situation. But if that was it, I mean, if that was it, I wouldn't be here because that's just them walking down the street and encountering a slight incline. But when you've got a situation where this was something where they directed Mr. Williams to that area, they required him to go to that area. Was that the area where you have to back your truck up so that they can load the equipment onto it? Well, it was the general area, yes. It was. But, I mean, they directed him to that area. It's not a general entrance to the store. It's not a general entrance to that. And they were aware of the fact that they were going to need to direct him specifically to that spot. Or a similar spot, as we argue further on in this, is that by them directing him to that spot, they're creating a situation where they know what they're doing. I mean, they're putting him in a situation where they're forcing him into this area. And they're requiring him to do that. And then they're taking the additional step of asking him to help them. They're asking him to get out of his vehicle on the incline. They're asking him to get out and help them to load this transmission that he had just purchased from them. And so, in doing so, they've put him in a situation where he's not on level ground. And so, even though it is a slight incline with the totality of the circumstances and everything else, they still have this duty of ordinary care. And the cases have pointed out that there are exceptions to this natural accumulation rule, where when there is an additional duty, sort of like in Frederick. I mean, Frederick, the court said, well, we don't find an additional duty. They were arguing that there was a contractual duty that was there that the court disagreed with. Well, I don't believe that the position is that there is no duty of ordinary care here, that that duty doesn't exist. I believe that duty exists. The question is, does the natural accumulation rule take it out of that and make it to where the plaintiff cannot establish that they actually reached that duty because it was a natural accumulation of ice. But once he had an interaction with them, they directed him to this incline. They asked him to get out of his vehicle. They asked him to help them. And they also, as we pointed out, and as the court in Clyburn v. CTA points out, is that it says that even though the CTA had no duty to remove snow or ice from the platform, it was plaintiff's burden to prove that the CTA could have fulfilled this duty to plaintiff in another way. And they could have fulfilled their duty to plaintiff in another way. They could have had another employee help to load this. They could have actually, if you look at the video, there was clearly enough room for him to have backed that vehicle into a dry, enclosed area, out of the ice and snow. It would have been very simple. They could have just said, hey, pull your truck in a little bit farther, get out of the ice, and that way there's no risk of you falling. There's no risk of you being injured while you're doing something that we're asking you to do to assist us. In an area where we've directed you to, in an area that is on an incline, and even though it's slight, it's still an incline, and they had a perfectly reasonable, simple option to avoid all of this. And they didn't do that. Instead, they chose to ask him to get out in the ice and snow, and they asked him to get out on the incline, and that's where he slipped and fell. What's the basis for your statement that they asked him to assist in loading this transmission? Well, he testified that they asked him. You see the employee coming up to the side of the truck. His testimony was that when he came up, the employee asked him, once the door was open, if he would get out and help him to load the transmission. And so the way we're looking at this is with the totality of the circumstances, and based on the different cases that the defendant cited, I mean these cases talk about the fact that there are these exceptions, and that if there is an additional duty, and if that additional duty was in fact breached, then there's still liability there, whether it's an extra slippery floor or whether there's a reasonable option that they could have chosen in order to avoid that. And so the fact that they chose not to do that, and the fact that they chose to put him in that situation, is a breach of their duty of ordinary care to him as a customer and an individual that's lawfully on their property. So we believe that they did in fact breach that other duty, and that this is an exception to the natural accumulation rule. It's not, like I said, it's not a situation where he just encountered this. Counsel, can you give us a case to support the theory? Well, I think the different cases talk about that. I mean, the Krywan case talks about this. I mean, how is this an exception? Because of the fact that, as stated in Dieffendorf, that there is a duty, there's a breach, and there's an injury. If that's the case, that's a general negligence duty that they have. And the courts in Frederick went through and said, if we found another duty, then there would be a potential claim there, but we didn't find another duty. The court in Krywan, again, said, I mean, if they could show other duty, are you suggesting there is? There's a duty of ordinary care. There's a duty of just providing a safe place for your customers, and there's a duty of not being negligent and asking someone to be put into a situation where they would be at risk to be injured. So, I mean, is it reasonable for them to ask a customer to get out, under the circumstances that they did, where they asked him to get out of his vehicle and assist them, when they had viable options that would have prevented that? Is that something that is? Hadn't he bought the transmission from them? Hmm? Hadn't he bought the transmission from them? Yes, he purchased the transmission from them. Weren't they helping him load the transmission? No, I believe he was helping them. I mean, my understanding of it was that the idea was that he was going to pull the truck up and they were going to load the transmission for him, and then the individual that was there realized that he needed some assistance, and so he asked him to get out of his truck and assist him. So, yes, he had bought it, but obviously a transmission, I mean, an average customer is not going to show up with a fork truck and, you know, equipment and things like that in order to be able to load a transmission onto the back of their vehicle. I mean, he showed up with his teenage daughter. So, under those circumstances, I believe that it was, the expectation was that they were loading. So this was not a typical salvage yard where you go and buy the parts and remove them yourself? No, it was not. No, I mean, and if you look at the videos, the videos clearly show that they had the transmission inside the bay and that they had it on a fork truck and that that's how they were loading it onto his truck was that he went in, opened the back of his truck, and then they brought up the fork truck and then he assisted them in putting it from the fork truck onto the back of his vehicle, in the back of his vehicle. So, I mean, it was a situation where they undertook the duty to do that, and they specifically, you could see the employee going up to the side of his vehicle and talking to him from the other side of the vehicle and talking to him, and he is stating that at that point, that employee requested that he be able to get out and assist him in doing that. So that was something that was specifically requested, and the employee stated that he couldn't recall specifically what had happened that day. He didn't recall the conversation as to whether or not he, in fact, did ask him or not. And so the only specific evidence that we have is Mr. Williams' testimony that that is, in fact, what occurred. So we do believe that, I mean, based off of the interaction with them and the things that they asked him to do and the position they put him in, we believe that a jury could find that that was a breach, that that was not a reasonable thing to do. That was a breach of their duty of ordinary care in regards to that, just from the totality of the circumstances. And I understand that just individually, each of them may not, by themselves, the cases may have said, individually, this circumstance by itself is not enough. But I believe that when you put it all together, it creates a situation where they had the opportunity and the ability to provide a safe way to do this, and they didn't do it, and they were negligent in that. And so, therefore, they breached their duty of ordinary care to Mr. Williams, resulting in his injuries. So, unless you have any other questions. No questions. Thank you, Your Honor. All right. Appellee, please identify yourself for the record, and you may proceed. Good morning. My name is John Meehan. I represent Max Auto and Recycling, Inc. Counsel, may it please the Court. Well, Counsel for Plaintiff has today, for the first time, conceded that this was a natural accumulation. That same question was put to him during oral argument by the trial court, and at that point, the answer was no. So, here, I think we can at least establish, for purposes of this appeal, then, that this patch of ice that was the size of a manhole cover, according to the plaintiff, was, in fact, using the words from the deposition, either water or snow that fell from the heavens and just naturally frozen. In fact, in my 33 years of doing premise liability cases, I've never had a plaintiff agree so thoroughly that something was, in fact, a natural accumulation. There was no salt. There were no shovel marks. There was nothing to indicate in any way, shape, or form that this patch of ice was man-made in any way. And I would say to C-50, for the record, and C-47, where you can find those references. Counsel, is that the dispositive issue? I believe it is the dispositive issue. Counsel keeps talking about exceptions to the natural accumulation rule. It's either a natural accumulation where there is no duty, or it's not a natural accumulation because of man-made activity or other situations or conditions. But there is no duty of ordinary care to protect against a natural accumulation of snow or ice. That's in the jury instructions, but it's also in case law that exists predating my 57 years. Once something is found to be a natural accumulation, there is no duty. And there's no duty to go beyond that. So that's why we spend so much time at the trial. And by go beyond that, I mean to protect against it or take other safeguard measures. The Illinois courts have said there is no duty whatsoever to take additional safeguard measures once this has been established as a natural accumulation. There's no duty to warn. There's no duty to put out mats. There's just no extra duty. So, counsel didn't put forward any case law whatsoever in either the trial court briefs or his appellant brief or reply brief that talked about the creation of a ordinary care duty when something is a natural accumulation. That's why we spent so much time arguing at the trial court level about whether it was a natural accumulation, why I've got so much of my time to try to rebut arguments that it was something other than a natural accumulation. Because Plank says in his brief that it was somehow due to incomplete or improper snow removal that morning. Well, nobody there, none of the three people he deposed, testified that they had any knowledge about snow removal activity of this ice patch or this ramp area that morning. All three testified that they didn't, in fact, either have a memory of it or they didn't have any knowledge about the existence of the ice condition or any snow removal activities or when they last occurred or even when it last snowed. The record is really devoid of some key facts in that regard. But what is the important point is that the plaintiff testified that he didn't see any snow removal activity by Max. And I just want to make that clear now because the plaintiff's appellant brief does talk about that, again, without citation to the record. Well, what's your response to Plank's argument that somehow there was a duty created because your client directed his client where to put the truck? Well, so that argument is basically an end around the natural accumulation rule. And the Illinois courts have specifically rejected making an exception or finding the natural accumulation rule doesn't apply for ingress and egress. So when a property owner invites somebody on their property and there's snow, ice, or water at the entrance of the store or in the parking lot, the courts have said, yeah, you've invited them here, but that still does not create a duty to protect, warn, or take other safeguard measures about that. I would cite the Tackus v. Dominick's Finer Foods where they said there was no duty to protect your plaintiffs from snow and ice in the parking lot. And then I would also refer to Branson v. R&L Investment Inc. where a male person was actually going up an inclined area, slipped and fell on water at the entrance. So again, kind of funneled to where the person could only go, slipped and fell, but was found to be a natural accumulation. And the court specifically said the property owner cannot be held for failure to provide adequate safeguards for people from falling from the natural accumulation. This was echoed by the fifth... This reasoning can also be found in the Fifth District case of Greenwood v. Lou, L-E-U, where a plaintiff was walking away from the grocery store down a sidewalk that was sloped and where it met the city sidewalk, snow and ice had accumulated. And the court again said, and the plaintiff argued, well, this is the egress path. You should have put out extra lights. You should have put out handrails. You should have put out foot mats. The court said no. There is... I haven't read all of the natural accumulation decisions in Illinois. There's so many of them. But the many, many that I have read in getting ready for this appeal and other appeals that I've done, I've never found a single one that applies an exception once something is defined as a natural accumulation. There are courts that say there can be, if somebody slips and falls on ice because they didn't see it because the lighting was improper, you can sue somebody for improper lighting. That's a totally different issue than creating a duty to protect against snow and ice. And that's what caused him to slip and fall in this case. And the only evidence that we have of it is, I mean, Mr. Williams didn't characterize it as anything other than a patch of ice. And the employees, when asked, simply said it was slight. I'd segue that into there's this talk about, well, he could have brought it into the garage. Well, there's no duty to do that, as we've talked about in the case law. But there's been also no questions asked about that during the deposition of any of the three employees of Max. Nobody was asked about the feasibility or even the plausibility of backing the thing all the way into the garage. What we do know from the videotape is that when he, when the garage door comes up, the forklift is there with the transmission on the force, ready to be loaded onto the bed of the truck. Now, the issue about whether he was asked to help or not, I'm not too up to speed on because that was never part of this case until just now. I've never heard that reference in any of the briefs at the trial court or appellate court or in your arguments at the trial court. So did the plaintiff testify in a deposition somewhere that your people asked him to help? I believe, and again, I'm going from memory, but I believe he was asked to clear the bed of the truck so that the forklift could load the transmission onto the bed of the truck. And that's what you see when, in the videotape, he's pushing things to the side, like he's pushing it to the side. But again, it's a bit of a red herring because it has nothing to do with whether or not at the time he slipped and fell on this manhole cover spot of clear ice, whether there was a duty to protect him against it. And there's, I would argue in the annals of natural accumulation, this is the clearest case out there about a natural accumulation and there being no duty. Very rarely do you get a plaintiff testify so clearly. No defect in the property, no defect in the concrete, no depression that caused it. It was just a manhole cover of ice that he opened the door and slipped on. So I would argue there's no duty here. The plaintiff hasn't put forward any case law to indicate that there is. And the Kerman case versus CTA that he referenced found, again, the natural accumulation trumped the arguments that were being made. And it's sort of like other cases say, you can have a cause of action if somebody falls on ice, but it's got to be for independent other things. And that involved the highest duty of care, a common carrier, which another case that I cited, Philpott versus Midway Airlines, again, the same issue was raised. They were saying they let the people out on the runway or the tarmac and they should have known it was icy or snowy and that that was negative. The Philpott court specifically declined to abrogate the natural accumulation rule. And in effect, that's what plaintiff is asking this court to do, to deviate from at least 60 years of precedent with a record that's very unclear and issues that are being raised now at the appellate court for the first time. I would also add, because, again, it's in the brief and I don't want, you know, when you go back later and you're reading the briefs, plaintiff talks about the fact that we directed him to this exact spot, that we had somebody that when he pulled around, we had somebody talk to him, then he backs up more and we tell him to stop. That's just not true. Now, I'm a little humbled by the fact that in my brief for the first time, I cited to a Harpo Marx movie, I think it was Duck Soup. I didn't know I was going to be arguing in the same building as Abraham Lincoln, but I still think it applies. Are you going to believe your eyes or are you going to believe counsel's assertions in his brief that don't have citations to the record? Because he came out of the office, he got in his truck, he backed up onto the concrete apron, and he never moved that truck again until he opened the door. So there was never, as he says on page 3 and page 5, there was never any issues where he was saying that he was stopped, told to move, and then told again to stop. That just didn't happen. He went to the bay. By the way, there's actually four bays. There's not just one. So it's not just this one area that we need to patrol. Nor, and again, this is in his reply brief, there's no evidence in the record that we had any notice of this patch of ice beforehand. He said that it was just a throwaway line, but, again, unsupported by any record, but it said that we had notice. We didn't. The three people specifically testified in their depositions that they either didn't remember the weather conditions that day or they specifically didn't have notice. So there's no exception to the longstanding rule in this case, and I would ask that the trial court be affirmed. Thank you. Any questions? No questions. Thank you, Counsel. Thank you. Rebuttal. Rebuttal. In regards to a few different things, the first thing is that he brings up the improper snow removal issue. He states that we're devoid of key facts in this matter. The reason for that is because none of the employees remember that day specifically, and so what we referred to was their description of what they generally did. And so as far as any sort of specific recollection from them that day as to what they knew or what they remembered, they said they had no recollection. And so, I mean, I can't provide information as to what they specifically knew or knew because nobody had a recollection of it. But, I mean, if you look at the videos, it's clearly out there. The employee was out there talking to him beforehand. He was clearly outside, so he would have known. Just logically speaking, he would have known what the weather was like that day. Again, I would also say, I mean, he referenced it being a parking lot. This was technically not in the parking lot. This was in the loading dock. This was in a loading bay. So this wasn't something where a general customer would necessarily just get out of their car and walk in, entrance, egress. This was an actual loading area that we're talking about. He had mentioned as far as he mentioned a case in regards to some lighting issues and the fact that there was liability found when the customers couldn't see it. And in this case, that is part of this because he was stepping out of his vehicle. And it was right where he was stepping out. So the vehicle, the door of the vehicle, I mean, obviously, as he's stepping out, he wasn't seeing what was right there underneath of the step as he was getting out. I would, again, just like to point out that in Clywin, I mean, the court basically stated that the reason that they found that there was nothing was because there was no feasible option for plaintiff presenting evidence that it was feasible or even possible to discharge all the passengers under the canopy or in some other manner that would have provided the passengers with a safe place to alight. And so to me, that was a huge factor in regards to the Clywin court's decision on that. And, again, this is a situation where they had a perfectly safe place for him to alight from his vehicle. And it was just a few feet away from where he was at. And the video clearly shows that they had sufficient room for him to have pulled that vehicle in. The other thing he talked about was that there was nothing in the record in regards to until today, in regards to the fact that the employees of the defendant asked my client to get out of his vehicle to assist him. On page 3 of both our brief and our reply brief, we specifically state that once he was there, an employee of the defendant's business, Jose Gutierrez, asked plaintiff to get out of his truck and assist him in placing the transmission in the back of the truck. And then we cite to the record of pages 47 to 48. That's also mentioned on page 3. Also, if you look at the record on page 15, in regards to the argument before the trial court, it says that, you know, according to Mr. Williams, he was specifically requested to get out in an area where, you know, when that employee was standing right there and walked up and immediately after he walks up. So, I mean, it was part of the argument in the trial court as well. So this clearly was brought up. The one thing I would like to clarify is, and I had mentioned this to counsel before we started today, was that there is, he did point out an error in our brief in which we stated that once he pulled up, he actually stopped and then pulled up again. And that was, I admit, that was my mistake. What I meant to say was that he had pulled into the lot and then he was asked to pull up. But I realize that I misstated that, and I apologize for that. But I don't believe that that's a significant thing in regards to this as far as that's concerned because he was still directed to where he stopped. And they still had the option of allowing him a safe place to alight from his truck and a way for him to get out without him being exposed to this natural accumulation. And the cases do talk about the exceptions, and they do talk about if there's an additional duty that can be established that was broken or that was breached, that that is a basis for liability. And we believe that there are sufficient facts in this case for a jury to make that determination and to consider the evidence. So, thank you. Thank you, counsel. I will take this matter under advisement and issue a ruling in due course. Thank you.